# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE MANOUGIAN on behalf of herself and all others similarly situated, | **Civil Action No.:** |
| Plaintiff, | |
| vs. | **COMPLAINT – CLASS ACTION** |
| TD BANK NORTH AMERICA, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Christine Manougian, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant TD Bank, N.A. ("TD Bank" or "Defendant"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### <u>NATURE OF THE ACTION</u>

1.      When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have had a practical opportunity to avoid the fee.

2.      Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes

a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.     On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4.     By contrast, banks maintain highly sophisticated systems for clearing checks and know, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5.     Nevertheless, despite having these capabilities, TD Bank routinely charges and collects what it refers to as "Cashed or Deposited Item Returned" fees. TD Bank imposes these fees whenever customers even **_attempt_** to make a deposit despite promising that such fees would be assessed only when an item attempted for deposit actually was fully cashed successfully or funds were deposited, used by the accountholder, and then later needed to be recouped by TD Bank. Indeed, TD Bank calls the fee at issue a Cashed or Deposited Item Returned Fee, not a "Cashing _Attempt_ or Deposit _Attempt_ Fee." TD Bank never represented to its accountholders that it would charge Cashed or Deposited Item Returned Fees whenever they attempted to make a deposit that failed.  As such, consumers like Plaintiff reasonably understand that they will only be assessed "Cashed or Deposited Item Returned Fees" when they are fully provided and use the funds attempted for deposit and those actually deposited and used funds are later reversed – not when attempted deposits are never made fully available or used by accountholders in the first place.

6.     TD Bank's fee assessment practice breaches its own adhesion contract because that contract only authorizes TD Bank to assess Cash or Deposited Item Returned Fees where it has fully cashed or deposited funds into an account, where accountholders have actually used such

funds, *and* where TD Bank must then attempt to recoup already-used funds. However, TD Bank routinely charges such fees even where it has not fully made deposited funds available to accountholders and such funds have not been used by accountholders for any purpose. In such cases, the supposed "return" of a deposit or reversal or funds deposited into an account is purely fictional since the funds were never actually deposited and there was no harm to TD Bank.

7.      Furthermore, by charging these Deposited Item Returned fees, TD Bank unfairly targeted its members with financial penalties for faulty checks the members had no hand in issuing. Plaintiff was shocked when she was charged this fee because she did nothing wrong yet was penalized by TD Bank. There was nothing Plaintiff could do to avoid—or even anticipate—a Deposited Item Returned fee assessed by TD Bank at the time the deposit was returned.

8.      By charging its customers significant fees in situations where they did nothing wrong and could not have avoided the fees through reasonable diligence, TD Bank acted in a manner that is unfair, oppressive, and against public policy.

9.      Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of TD Bank's Cashed or Deposited Item Returned fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Cashed or Deposited Item Returned fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which consumers likely cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed April 4, 2024).

10.     Accordingly, Plaintiff, on behalf of herself and the Class and Subclass (defined below), now seeks to hold TD Bank accountable for its unlawful and deceptive policy, and seeks damages, restitution, and injunctive relief, as set forth below.

## PARTIES

11.     Plaintiff Christine Manougian is, and at all times mentioned herein was, an individual citizen of the State of New York residing in the County of Nassau and held a TD Bank deposit account during the applicable statute of limitations period. On March 8, 2022 and May 13, 2022, Plaintiff Manougian was charged $15 Cashed or Deposited Item Returned Fees.

12.     Defendant TD Bank is a national bank with a main office and principal place of business in Cherry Hill, New Jersey. Accordingly, pursuant to 28 U.S.C. §1348, TD Bank is a citizen of the State of New Jersey. As of January 31, 2024, TD Bank had roughly 10 million customers and over $400 billion in assets.[2] TD Bank has over 1,100 locations across 15 states. *Id.*

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

14.     This Court has jurisdiction over Defendant because it operates in the State of New York and a substantial part of the unlawful business practices which give rise to this action occurred in the State of New York.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this action occurred in this District.

---

[2]     *See* TD Bank, Business Profile (Jan. 31, 2024), available at: https://www.td.com/content/dam/tdb/document/pdf/about-us/td-bank-corporate-profile-en.pdf (last accessed May 29, 2024).

## FACTUAL BACKGROUND

### I.    DEPOSITED ITEM RETURNED FEES

16.    TD Bank's accountholders are routinely charged Cashed or Deposited Item Returned Fees on attempted deposits into their checking account that are returned unpaid because the deposit could not be processed against the originator's account. This occurs even when an attempted deposit never results in the accountholder accessing or fully having access to the amount of the attempted deposit—in other words, where no "deposit" actually occurs.

17.    TD Bank levies Deposited Item Returned fees when a check is returned because it cannot be processed against the originator's account.

18.    In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, TD Bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear.

19.    There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor: The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself.  Even though the depositor has no control over the check, the Deposited Item Returned fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

20.    Cashed or Deposited Item Returned fees are widespread within the banking industry, with most major banks and financial institutions levying them as part of their standard fee structure. The ubiquitous and unavoidable nature of Deposited Item Returned fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor.  In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

21.    Recognizing the potential for abuse, the CFPB issued Bulletin 2022-06 on November 7, 2022 (the "Bulletin"). The Bulletin, entitled *Unfair Returned Deposited Item Fee*

5

*Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Deposited Item Returned fees, particularly instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

22.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). It took issue with financial institutions, like TD Bank, that charge consumers Cashed or Deposited Item Returned fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the**

> **account**. Nor would a consumer normally be able to verify whether
> a check will clear with the check originator's depository institution
> before depositing the check or be able to pass along the cost of the
> fee to the check originator.

87 FR 66940, 66941 (emphases added).[3]

23.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II.     TD BANK IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

24.     TD Bank offers a diverse range of deposit accounts, including a range of different checking and savings options, to its members like Plaintiff and the putative Class and Subclass members. However, TD Bank fails to be transparent about the Cashed or Deposited Item Returned fee.

25.     Customers' accounts are governed by a "Deposit Account Agreement" ("Account Agreement"), outlining the governing terms. This Agreement, along with an applicable fee schedule, supposedly provides comprehensive information. However, a critical detail is missing from the Account agreement: Deposited Item Returned fees are nowhere to be found in the

---

[3] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed May 29, 2024).

Account Agreement.[4] This omission stands in stark contrast to the clear explanations provided for other fees. The Account Agreement explains overdraft fees in detail but there is no explanation as to Deposited Item Returned fees.

26.    A consumer cannot reasonably expect to be charged a fee for a Deposited Item Returned fee where that fee is not disclosed in the Account Agreement. While nowhere disclosed, in practice TD Bank uniformly charged its customers a blanket $15 fee for items that are returned by no fault of the customer.

27.    TD Bank accountholders are routinely charged Deposited Item Returned fees on attempted deposits into their checking account that are returned unpaid because the deposit could not be processed against the originator's account. This occurred even when an attempted deposit never resulted in the accountholder accessing or fully having access to the amount of the attempted deposit—in other words, where no "deposit" actually occurred.

28.    While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

29.    Customers like Plaintiff attempting to deposit funds lacked any control over whether the deposit would be returned and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

30.    Conversely, upon information and belief, TD Bank maintains sophisticated systems to make sure that checks submitted for deposit are valid for processing and that the person or

---

[4] *See* TD Bank Account Agreement, effective March 2024 at 5, attached hereto as Exhibit A ("**Account Agreement**").

business who wrote the check has sufficient money to pay it.  Thus, TD Bank has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

31.     TD Bank's blanket policy of charging Deposited Item Returned fees on all returned deposits, regardless of the origin of the check or the cause of its return and even on *attempted deposits* or *attempted* check cashing, even where no *actual deposit or check cashing took place*, is unfair because it penalizes them for circumstances outside of their control.

32.     TD Bank itself named the relevant fee a ***Cashed*** or Deposited Item Returned Fee, which reasonably indicates that such a fee will only be assessed by the Bank where an item is *successfully* "cashed" so funds can be used fully by an accountholder. Instead, the fee is charged to accountholders even when TD Bank incurs no loss from the returned transaction and indeed does not even fully make the funds available to accountholders at all, meaning TD Bank has no need to try to recoup such amounts.

33.     "Cashed or Deposited" as those terms appear in TD Bank's Fee Schedule reasonably refer to the circumstances in which a deposit is successfully performed, such that an accountholder is fully provided the funds deposited for use and actually uses such funds. In financial industry terms, and according to the Farlex Financial Dictionary, "cashed" means "to deposit a check at a bank or other institution and to receive cash in exchange." "Deposited" analogously means to deposit an item and to receive use of the funds deposited in exchange. But TD Bank as a matter of policy assesses Cashed or Deposited Item Returned Fees even where no cash has been received by an accountholder and even where no funds have been provided for use by the accountholder.

34.     In short, "Cashed" or "Deposited" as used in the TD Bank Fee Schedule does not and cannot reasonably mean that TD Bank may assess a fee when it merely accepts and tries to effectuate a deposit at a later time, nor can it reasonably mean a mere notation in a system or on a

bank statement that TD Bank is considering whether to not make funds available at some future time.

35.     It is unfair and deceptive to charge mis-named Cashed or Deposited Item Returned Fees even where no "cashing" or "deposit" has occurred. The fee is not, after all, called an *Attempted* Cashed or *Attempted* Deposited Item Returned fee.

### III.   TD BANK BREACHED ITS ADHESION CONTRACT WHEN IT ASSESSED CASHED OR DEPOSITED ITEM RETURNED FEES ON DEPOSITS THAT NEVER OCCURRED

36.     When a deposit is attempted by an accountholder, funds may be provided by TD Bank immediately in the form of cash or immediately in the form of full electronic access to the deposited amount, both subject to later verification of the validity of the deposit. On the other hand, in other cases and at TD Bank's discretion, no cash will be provided for the attempted deposit and no funds will be made available immediately in the form of electronic access to the deposited amount, or only a small amount of the attempted deposit will be made available while TD Bank attempts to verify the validity of the attempted deposit. These provide two very different paths when TD Bank determined an attempted deposit must be returned.

37.     In the former path (when cash or electronic access is provided immediately), the return of a deposit causes real risk for TD Bank. Having already provided cash or allowed the accountholder to use funds deposited, TD Bank must attempt to recoup those funds and must debit funds from the account to ensure they can no longer be spent. Debiting those funds may cause an overdraft on the account.

38.     In the latter path (where no or a small amount of cash was provided for use by the accountholder), it is far different. Having never fully provided cash or provided a full increase in funds that an accountholder can use, TD Bank does not need to attempt to recoup any funds and need not attempt to debit funds from an account where such funds have already been spent. It need only make a bookkeeping notation in its records that funds will not be provided for use in the future as a result of an attempted deposit.

39.     According to the Deposit Agreement and Fee Schedule, TD Bank is authorized by contract to charge Cashed or Deposited Item Returned Fees and/or Overdraft Fees on returned deposits <u>only</u> when it has actually provided cash to an accountholder or provided "provisional credit" for immediate use and then must "reverse" such credit:

> **Deposit Policy**
> We may refuse to accept an item for deposit or to return all or a part of it to you. Any item that we accept for deposit is subject to later verification. We will usually give you provisional credit for items deposited into your Account. However, we may delay or refuse to give you provisional credit if we believe in our discretion that your item will not be paid. ***We will reverse any provisional credit we have given for an item deposited into your Account if we do not receive final credit for that item, and charge you a fee (see Personal Fee Schedule). If the reversal of a provisional credit creates an overdraft in your Account, you will owe us the amount of the overdraft, plus any overdraft fees when applicable (see Personal Fee Schedule)***. We will determine when final credit is received for any item. Please read the Funds Availability Policy for a detailed discussion of how and when we make funds available to you.

Ex. A, at 5 (emphasis added).

40.     The term "provisional credit" is not defined, but reasonably means a credit of the full amount of the deposit and use by the accountholder of that deposit.

41.     However, TD Bank routinely charges Cashed or Deposited Item Return Fees even where it provided no immediate provisional credit for the full amount of the attempted deposit and therefore made no reversal or debit of funds when the attempted deposit failed.

42.     Where there is no cash provided and no full provisional credit made available — in other words, where only an attempted or partial deposit occurs — TD Bank is not authorized by its own adhesion contract to assess a Cashed or Deposited Item Returned Fee.

43.     TD Bank's Deposit Agreement reaffirms this principle in another provision:

> **Returned Checks/Waiver of Rights**
> If you deposit a check or item in your Account that the drawee bank returns unpaid for any reason (called "dishonor"), ***the amount of the dishonored check or item will be deducted from your Account*** . . . You agree to pay the Bank a fee for any such check or item that is dishonored (see Personal Fee Schedule). The Bank may also collect any amounts due to the Bank because of returned checks, through the

11

right of set-off, from any other of your Accounts at the Bank, or collect the funds directly from you.

*Id.* at 6 (emphasis added).

44.     The above provision reiterates this fundamental premise — there will be no Cashed or Deposited Item Returned Fee assessed where the funds were not fully made available to the accountholder. An amount "of the dishonored check" can only be "deducted" from an account where it has been previously provided in full. Nor is there any need to "collect amounts due" where no amounts were fully made available in the first place.

45.     Yet a third Deposit Agreement provision makes these same promises again— where funds from an attempted deposit are made available and then it is later determined that the deposit was not valid, it is only in that circumstance that an Overdraft Fee may be assessed:

> **Returned Items Subsequent to Availability of Funds**
> If a check or other item you deposited to your Account is returned to us unpaid after the funds have been made available to you, the amount of the check or other item will be deducted from your Account. If there are insufficient funds in your Account, we reserve the right to demand payment directly from you and to charge you for the overdraft, if applicable, as posted in our most recent Personal Fee Schedule.

*Id.* at 46.

46.     In other words, there is no Overdraft Fee assessed where the funds were not fully made available to the accountholder and then subsequently deducted from the account. This makes sense — where TD Bank makes funds available immediately, those funds are used by the accountholder, and then must later deduct those funds from an account, it is assuming risk and providing a service, so an Overdraft Fee is (arguably) justified.

47.     Indeed, the Deposit Agreement makes clear the Bank may provide cash to a person depositing a check drawn on another bank — that, in other words, TD Bank may "cash" such a check and will retain certain protections when it does so:

> **Cashing of Checks**
> Typically, the Bank will cash checks drawn on other banks for its Customers who have adequate available funds in their Account(s). If any such check should be returned by the paying bank for any reason, the Bank will charge you a fee (see

12

Personal Fee Schedule). In addition, the Bank will debit the amount of the returned check from your Account(s). If the debit creates an overdraft in your Account, you will owe us the amount of the overdraft plus any overdraft fees when applicable (see Personal Fee Schedule).

*Id.* at 6.

48.    The above provision does not apply and does not provide Defendant with the ability to "debit the amount of the returned check" or assess overdraft fees when no cash was ever provided and no deposit was made in the first place.

49.    Lastly, and as described in more detail above, the Fee Schedule, makes the same promise that a Cashed or Deposited Item Returned Fee will only be assessed where cash or immediate availability was provided to an accountholder: Cashed or deposited item returned (per item) $15.00.

## IV.    TD BANK CHARGED PLAINTIFF A DEPOSITED ITEM RETURNED FEE

50.    Christine Manougian held a TD Bank deposit account during the applicable limitations period.

51.    On or around March 8, 2022, Ms. Manougian attempted to deposit a check into her TD Bank account.

52.    At the time she attempted to deposit the check into her TD Bank account, Ms. Manougian had no reason to believe that the checks would be returned unpaid.

53.    Ms. Manougian was not provided provisional credit for the full amount of the attempted deposit, was not allowed to use that the full amount of the attempted deposit, and did not in fact use any portion of the attempted deposit.

54.    The same day, to Ms. Manougian's surprise and by no fault of her own, the check she deposited was returned unpaid. TD Bank charged Ms. Manougian a Deposited Item Returned fee of $15.00. The Deposited Item Returned fee was deducted from the balance of Ms. Manougian' account.

55.    Because the $15 Deposited Item Returned fee which TD Bank charged Ms. Manougian was assessed pursuant to TD Bank's blanket internal policy of assessing such fees

irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned fee was unfair and unlawful.

56.     Also, on or around May 13, 2022, Ms. Manougian attempted to deposit a check into her TD Bank account.

57.     At the time she attempted to deposit the check into her TD Bank account, Ms. Manougian had no reason to believe that the checks would be returned unpaid.

58.     Ms. Manougian was not provided provisional credit for the full amount of the attempted deposit, was not allowed to use that the full amount of the attempted deposit, and did not in fact use any portion of the attempted deposit.

59.     The same day, to Ms. Manougian's surprise and by no fault of her own, the check she deposited was returned unpaid. TD Bank charged Ms. Manougian a Deposited Item Returned fee of $15.00. The Deposited Item Returned fee was deducted from the balance of Ms. Manougian' account.

60.     Because the $15 Deposited Item Returned fee which TD Bank charged Ms. Manougian was assessed pursuant to TD Bank's blanket internal policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

61.     Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

62.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with TD Bank and were charged a Cashed or Deposited Item Returned fee by TD Bank.
>
> **New York State Subclass** (the "**New York Subclass**")

14

> All individuals who, during the applicable statute of limitations, had or have accounts with TD Bank located in New York and were charged a Cashed or Deposited Item Returned fee by TD Bank.

63.     Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

64.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

65.     The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

66.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class and Subclass contain thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

67.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendant's assessment of Cashed or Deposited Item Returned fees was unfair, deceptive, or misleading;

b.   Whether Defendant breached the Account Agreement with Plaintiff and the Class by charging undisclosed Deposited Item Returned fees;

c.   Whether Defendant breached the Account Agreement and the Implied Covenant of Good Faith and Fair Dealing by assessing Deposited Item Returned fees on transactions in cases where the accountholders had no reason to believe the deposit would be returned unpaid;

d.   Whether Defendant was unjustly enriched as a result of charging Plaintiff, the Class, and Subclass the "Deposited Item Returned fees";

e.   Whether Plaintiff and the Class and Subclass suffered damages as a result of Defendant's assessment of Deposited Item Returned fees;

f.   Whether Defendant's conduct, as alleged herein, constitutes a violation of New York's Consumer Protection and Deceptive Acts and Practices Act, codified at N.Y. Gen. Bus. Law § 349 (the "GBL § 349");

g.   The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

h.   Whether Plaintiff and the Class and Subclass are entitled to declaratory and injunctive relief and the nature of that relief.

68.   **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class and Subclass, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Subclass members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class and Subclass. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclass.

69.   **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiff and members of the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Cashed or Deposited Item Returned fees. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiff.

70.   **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or the Subclass, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.

Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

71.     Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Subclass will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class and Subclass and the general public may continue to be unfairly treated.

72.     Defendant has acted and refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class and each Subclass as a whole.

<u>COUNT I</u>
**BREACH OF CONTRACT AND IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING
(On behalf of Plaintiff and the Class)**

73.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-71 as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

75.     Plaintiff and each member of the Class have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in TD Bank's Account Agreement and related documentation.

76.     No contract provision authorizes TD Bank to charge Cashed or Deposited Item Returned fees even on *attempted* deposits where no actual deposit took place and no funds were made available to accountholders.

77.     TD Bank breached the terms of the Account Agreement by charging these fees.

78.     Additionally, a covenant of good faith and fair dealing is implied in Plaintiff and the Class members' Account Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

79.     The material terms of the Account Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff and the Class members' rights and benefits under the contract.

80.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

81.     TD Bank has breached the covenant of good faith and fair dealing in the Account Agreement through its policies and practices as alleged herein.

82.     As a result of Defendant's breach of the Account Agreement, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**COUNT II**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**
*(Plead in the alternative to Count I)*

83.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–71 as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

85.     Plaintiff and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Deposited Item Returned fees.

86.     Plaintiff and members of the Class were, and many continue to be, members of Defendant with deposit accounts. They reasonably believed that TD Bank would not charge them undisclosed and unreasonable fees beyond their control. Plaintiff and members of the Class suffered financial losses when they were charged Deposited Item Returned fees in the form of funds deducted from their accounts.

87.     By charging Deposited Item Returned fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $15 charge each time an item was returned, from each of their customers' accounts, regardless of their own action, without providing any additional service or value to their customers, including Plaintiff and members of the Class. Defendant has accepted and retained these benefits even though it failed to provide any service or product to its customers and failed to provide any manner to avoid these fees, making Defendant's retention of them unjust.

88.     By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of

avoiding, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class.

89.     Plaintiff and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

90.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

91.     Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

92.     Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

93.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

### COUNT III
### VIOLATION OF NEW YORK'S CONSUMER PROTECTION STATUTE,
### N.Y. Gen. Bus. Law §§ 349, *et seq*. ("GBL 349")
### (Plaintiff Manougian on behalf of herself and the New York Subclass)

94.     Plaintiff Manougian repeats and realleges each and every allegation contained in paragraphs 1–71 as if fully set forth herein.

95.     Plaintiff Manougian brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

96.     New York General Business Law § 349 ("GBL § 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

97.     Charging Deposited Item Returned fees in the context of consumer retail deposit accounts impacts thousands, if not millions, of consumers throughout New York and the country,

and is therefore consumer oriented. TD Bank's blanket policy of charging Cashed or Deposited Item Returned fees disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups.

98.     Defendant charged Cashed Deposited Item Returned fees in the regular course of its business and in the course of conducting trade and commerce and charged Ms. Manougian and the New York Subclass Cashed or Deposited Item Returned Fees in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Ms. Manougian and the New York Subclass, automatically debited their accounts accordingly. This issue unquestionably impacts the public interest in New York.

99.     Charging Deposited Item Returned Fees is deceptive because customers expect that the checks they just deposited will generate additional funds that will be available. In other words, customers assume that the balance on their account will increase by the amount of the check they deposit. Charging these fees, for reasons beyond the customer's control, is deceptive because it undermines customers' expectations that additional funds will be in their account. Not only are these fees not disclosed in the Account Agreement, even if they were there is no explanation of when they are imposed making it nearly impossible for consumers to comprehend. Customers cannot expect to be charged fees in situations where the customer has no control or fault.

100.    Further, there was nothing Defendant's customers could do to avoid paying these illegal, unconscionable, and predatory fees. There was no justification for imposing these blanket fees, which the CFPB has deemed "junk fees." By imposing these fees, which provided no measurable service or product to its customers, including   Ms. Manougian and the New York Subclass, Defendant engaged in unfair business practice in violation of New York General Business Law.

101.    Defendant's actions regarding Cashed or Deposited Item Returned Fees, as described herein, are deceptive acts or practices in the conduct of the business trade or commerce or retail banking.

102.    Furthermore, under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

103.    The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Returned fees, such as those charged by TD Bank, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

104.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Cashed Deposited Item Returned fees is deceptive and unfair and constitutes an unfair, abusive and deceptive practice under GBL § 349.

105.    The deceptive acts or practices in the furnishing of retail banking services took place in this state.

106.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such lawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

107.    Ms. Manougian and the New York Subclass have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

108.    Ms. Manougian and the New York Subclass have been damaged in the amount of the Cashed Deposited Item Returned fees collected by Defendant from customers with accounts located in New York.   Ms. Manougian and the New York Subclass are entitled to reimbursement

in amounts to be determined at a later date, but not less than the full amount of the fees, and interest thereon, which Defendant has taken from them, or fifty dollars, and injunctive relief.

109.    TD Bank's misleading and deceptive conduct occurred, and continues to occur, in the course of TD Bank's business.

110.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the New York Subclass are entitled to relief, including restitution, actual and/or statutory damages, costs, and attorneys' fees under GBL § 349.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff undersigned attorneys as Class Counsel to represent the Class Members;

B.    Naming Plaintiff Manougian as the representatives of the New York Subclass;

C.    Declaring that Defendant's conduct violated the laws referenced herein;

D.    Finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

E.    Awarding actual, consequential, punitive, statutory, and treble damages as applicable;

F.    Awarding pre-judgment and post-judgment interest on all amounts awarded;

G.    For injunctive relief as pleaded or as the Court may deem proper;

H.    For disgorgement and restitution to Plaintiff and the Class and/or Subclass members of all monies received or collected from Plaintiff and the Class and/or Subclass members and all other forms of equitable relief;

I.    Awarding Plaintiff and the Class and Subclass reasonable attorneys' fees and expenses and costs of suit;

J.      Awarding damages in an amount to be determined at trial; and

K.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: June 21, 2024                    Respectfully submitted,


                                        **SIRI & GLIMSTAD LLP**


                                        By: /s/ *Lisa R. Considine*_____

                                        Lisa R. Considine
                                        Oren Faircloth (*pro hac vice* forthcoming)
                                        745 Fifth Avenue, Suite 500
                                        New York, New York 10151
                                        Tel: 772-783-8463
                                        Facsimile: 646-417-5967
                                        E: lconsidine@sirillp.com
                                        E: ofaircloth@sirillp.com


                                        *Attorneys for Plaintiff and the Proposed Class*